This is our second case today 4-13-0358 People's State of Illinois v. Anthony O'Donnell. The attorney Bapst is here on behalf of the appellant. Attorney Majors is here on behalf of the appellee. Mr. Bapst, are you ready to proceed? Thank you and may it please the court, Mr. Majors. Good morning, your honors. Lawrence Bapst representing Anthony O'Donnell on behalf of the appellate defender. Mr. O'Donnell was convicted after a jury trial of drugging under the influence of alcohol. He received probation, but he did not receive a fair trial. During the trial, improper opinion testimony was introduced, what the courts have come to call human lie detector testimony. The prosecutor in this case questioned Officer Bragg, who interrogated the defendant at the scene of the crime, why she didn't believe when he denied being the driver of the car. She indicated that whenever he answered her questions regarding the driving, he would look away or look down. The prosecutor then asked if that was an indication of lying, and Officer Bragg said based on her training and experience, it was a sign of deception. The prosecutor continued this inquiry regarding the interrogation at the police station, where she also made similar comments that every time she would ask him whether he was driving the car, he would deny it, but he would look down or away. Similar testimony to this, in the United States v. Williams, a federal case, and in People v. Henderson, have held this type of testimony to be improper. Both this court and the court in Williams refer to this type of testimony as useless. In this case, the state has not argued that this testimony was properly used. They've only argued that plain error review is not warranted. Now the underlying concern of the plain error rule is that the defendant received a fair trial, and we'll show that in this particular case, given these facts and what occurred, Anthony was denied a fair trial. There was a clear and obvious error. The first part of the plain error rule requires that, so we know we have clear and obvious error. Whether the evidence was so closely balanced that this error alone threatened to tip the scales of justice against the defendant is the second part. Now in the Henderson case, this court refused to apply plain error, and rightly so. The evidence in that case was significantly different. In that case, the defendant didn't testify. He didn't put on a defense. The evidence against him was the complainant's testimony plus a DNA match on 26th and 26th loci that the defendant was the person who had assaulted the complainant. In addition, there was evidence that he lied to the police that he had never met the complainant. So Henderson is not like this case. If Henderson had been just the complainant's testimony versus the defendant's testimony, the evidence would have been closely balanced. In that case, when the police officer testified that Henderson lied during his interviews with the police, that would have been on the direct, exact issue that was before the jury. Who was telling the truth? The credibility. That's what we have in this case, and that's why Anthony was denied a fair trial. Mr. Baps, the problem here is, as a trial court judge, which all of us were, you're sitting there, you've got a jury sitting there, nobody's objecting, and trial judges are insert themselves into a trial where there's no objection. So the state shouldn't be doing what they're doing, and the defense should be objecting so that the trial judge has a chance to keep this evidence out. I understand that, Your Honor, but that's the whole point of the plain error rule. The Supreme Court rule says that in some cases where the evidence is so closely balanced that this one particular error went right to the crucial, ultimate issue for the jury. Even when the prosecutor is doing something he knows he shouldn't do. It kind of indicates to you that maybe it wasn't as crucial as it's made to seem on appeal. Nobody's objecting. Nobody's objecting. I can't put myself into the defense counsel's place because I didn't do the trial. It's possible that by objecting to it, he gets a big highlighter and puts a big bulb of light over this testimony that the jury will remember. Well if that's the case, then that's his strategy, right? But the point of the plain error rule is to ensure that in these cases, even when that strategy is used by defense counsel, there are times when the error is so great and the evidence is so closely balanced that you have to grant a new trial. Okay, what was closely balanced about the evidence in this case? The only two facts that they need to prove for the offense of driving under the influence is that he was under the influence of alcohol and that he was driving. And in this case, he admitted that he was under the influence of alcohol. That was what he reported to the police and that's what he testified to at trial. So the only question was whether he was driving. No one saw him driving. He said someone else was driving. That's a credibility question. That's a closed case. There's not enough evidence for the jury if they're improperly told that the defendant is lying about driving. That's the very ultimate issue that they have to decide. They're told by Officer Bragg that he was lying about that. They're told that on a number of occasions that he's lying about that every time. That's an argument the prosecutor would have been permitted to make in closing argument, regardless of the testimony, wouldn't he have? He could have made the argument that the defendant was lying, but he would not have had the benefit of Officer Bragg's she knew he was lying because of the things that he did. So that's where the error occurred. Well, counsel, do you agree that you don't necessarily have to have direct evidence of him driving in order to defeat the plain error analysis? The state does not have to have direct evidence that he was driving to prove that he was guilty of driving. And as I think I've indicated in briefs, we're not arguing that the evidence was insufficient. If you use the standard of review for a reasonable doubt, if you look at the evidence and like most people in the state, clearly there's enough evidence to show that he was he was driving. I guess my point is, isn't it correct that the evidence in this case, although there wasn't direct evidence, there was still quite a bit of circumstantial evidence that one could still say that it was not close? Well, I mean, I would disagree that it wasn't close. There was circumstantial evidence that could have showed, excuse me, that could have provided the jury with an inference that he was driving. But those inferences were not the only inferences that the jury could have made. They could have found that the evidence did not show that he was driving, that there wasn't any direct evidence. So it's all inferential evidence. They could either accept an inference from a fact that the state introduces, or they could reject it based on the defendant's testimony that he wasn't driving. In that way, that, I mean, that's my position as to why the evidence is is close, close accounts. We have a credibility contest between the defendant and circumstantial evidence. And there isn't any DNA evidence, there isn't any fingerprint evidence, the types of circumstantial evidence that courts have kind of referred to as strong circumstantial evidence. These are facts that the state has said, well, this shows that this could have happened, or this shows that that could have happened. There's other inferences that could be made. I think I addressed them in the briefing. But in this type of case, where the defendant puts his credibility out there for the jury to decide, he got up to take the stand right after Officer Bragg had done saying, oh no, I know he was lying about being the driver. What's he going to do? He gets up there and tells his story. Now every time he says that he wasn't driving, the jury remembers, oh yeah, but Officer Bragg said that he was lying when he said that, and he was looking down in a way. God forbid that during his testimony, that's a mannerism that he has, and he was doing that. I mean, that would have, that would have sealed the deal with that. So it's the type, this is the type, I understand reluctance on plain error, but it is the rule, and this is the type of case, it's closely balanced. The ultimate question was whether or not he was driving, and he said he didn't do it. No direct evidence of that. That's the kind of closely balanced case that requires plain error review, and in these circumstances, the defendant should receive a new trial. Unless the court has any further questions. Thank you. Mr. Banks, do I have a chance on rebuttal? Mr. Majors? Mr. Majors, why do state's attorneys keep doing this? I don't know. Are you guys providing training to them? I mean, my goodness. I think Mr. Robinson has made a real effort since he got in our shop to do this. I don't know if the message is getting through. I think this trial took place after the decision that Judge Steinman wrote, and I think it was the Henderson case. Seems to me we ought to be providing copies of those decisions to the assistant state's attorneys. I couldn't agree with you more. Okay, go ahead, I'm sorry. Well, I was going to say, may it please the court and counsel, I think the court's covered everything I want to cover, so I'm just going to try to answer the court's questions. Why wasn't it close? Well, I'm sure you have a list like I have, your honor. Counsel mentioned DNA and fingerprints. DNA and fingerprints don't lie, but neither do photographs, and my hat's off to Officer Bragg. She has no sense to take photographs. You know, one photograph's worth a thousand words, and we got 15 of them. It shows that the seat cushion is in the driver's seat, and he said at least twice that he was on the seat cushion when the crash occurred. There's only one path away. Again, these things are all in the photograph. One path away from the car, not two. There were two police units and several, for exact words, were several fire department units out looking at around 12 30 to one o'clock, looking for two people on the country road, and they only found one. The doors were closed when photographs were taken, and the officer testified they wouldn't open. Picture 11 is a photograph that Officer Bragg took of the passenger seat, and it's filled with clutter, indicating no one sat there. There's another photograph where she removed some of the clutter. The airbag on the driver's side has been disturbed. The photograph shows that the airbag on the passenger side wasn't disturbed. The defendant has fixed with his story that he went out the passenger side after this John, and he has no explanation for his bleeding knee tops. Now, I assume he was lying about John. I assume he was lying about going out the driver's door, but he can't have it both ways. So, he either injured the tops of his knees crawling out one of those windows, or he did, as I've argued, on the on the steering wheel, and only the driver would be injured by the steering wheel. He didn't want to take any kind of testing. That's what a driver would do. I don't know. He admitted he was drunk. He didn't need to take the test. He admitted he was drunk. I don't think we're going to continue on with those. I don't see any, Mr. Majors. Any rebuttal, Mr. Banff? Thank you. In terms of the photographs that show all the interior of the car, but this car had been in an accident where it apparently flipped and rolled, and we can all take judicial notice of physics. If the car flips over, things are going to fly over all over the car. So, while you could look at the photographs and make these inferences that counsel has suggested, you could also look at it and say, how can we know where anything was before the car flipped in the air versus where they are now? John left the car. We don't know what he did in terms of moving items around after they landed. We don't know what the defendant moved. So, I don't really think that the inferences are as strong as counsel would suggest. What about the cell phone that was underneath, the defendant's cell phone underneath the cushion on the driver's side? I mean, again, I can't, I didn't see the car. There are pictures of it sitting there, but there's no way to determine how, whether it was attached, whether it was stuck, whether it was under something, whether it, where it came from. It's just, there's just no way to know for sure. And the defendant's testimony was that he was sitting in the passenger seat. So, it's possible that the car was sitting, that the phone was sitting on beside him or in a central console. The car hit the fire hydrant, flipped up in the air, the phone landed in the driver's seat. It's possible. It's something that he testified and the jury could believe if his credibility hadn't been attacked by Officer Brown. In terms of the one path away through the bean field, we don't really have a clear indication. Common sense tells you that bean fields are planted in rows, so if a defendant walked, if John walked along the road, he might not leave the path. He might have walked back away from the car, from the path where the car came through the bean field. It could have been that the defendant walked through the beans because he was disoriented. It was dark. He didn't know where the road was. Counsel suggests that the fact that they only found one person indicates that it was only a defendant out there. We don't know how far away John lived. We know that they were driving to John's house. He might have made it home by the time police started to investigate this and look for someone else on the road. He might not have been as hurt as the defendant, so the defendant might have been sitting there for a while before he got out. And the fact that Officer Bragg couldn't open the door doesn't necessarily mean that the door couldn't have been open from the inside when John and the defendant came out. The counsel suggests that he just assumes that the defendant is lying about all of this, but that's the whole point. It's the defendant's credibility that we have to consider. He testified that he wasn't driving, and all of these things go to his credibility. And the bad testimony in this case from Officer Bragg went right to what he was on trial for. His warning that he wasn't the driver. The first question that the court asked when counsel stood up was, why didn't prosecutors do this? My answer in this case is the prosecutor knew he had a weak case. He knew that he didn't have any way to show directly that the defendant was driving. And by enlisting this testimony deliberately, he was able to tip the balances improperly against the defendant. And it's for these reasons that we feel that the defendant should get a new trial. Thank you, counsel. We'll take the matter under advice when we'll be in recess.